## Richard Tone

*v.*

## Berry Wilson *et al.*

| 81 | 529 |
|----|-----|
| 22a | 591 |
| 25a | 164 |
| 81 | 529 |
| 141 | 581 |
| 81 | 529 |
| 154 | 590 |
| 81 | 529 |
| 175 | 469 |
| 81 | 529 |
| 203 | ²630 |

1. COVENANTS—*of seizin and right to convey.* The covenants of seizin and of good right to convey, in a conveyance of land, are *in presenti,* and do not run with the land; and if the grantor, at the time, has no title to a portion of the premises, the grantee will have a right of action immediately to recover the proportion of the purchase money which the interest not conveyed bears to the portion to which the title passed. He is not bound to wait until evicted.

2. SAME — *damages for breach, on foreclosure.* On bill to foreclose a mortgage given to secure the payment of the purchase money of land, where the land was conveyed with covenants of seizin and right to convey, and the grantor did not own the entire title, the defendant, without an eviction, may interpose, in defense, the failure of consideration, or recoup the damages, in his answer, as to the interest not conveyed.

3. CHANCERY JURISDICTION—*relief against decree.* As a general rule, where a party has a defense, and fails or refuses to make it in a proceeding where it is allowed, equity will not relieve, and allow it against the recovery. Ignorance of the law, or advice of counsel that the defense is unavailing,

furnishes no excuse for not interposing the defense, and will not justify equitable interposition.

4. Fraud—*representations must be known to be false.* To make false representations fraudulent, the party making them must have known them to be false.

Appeal from the Circuit Court of Madison county; the Hon. William H. Snyder, Judge, presiding.

Mr. A. W. Metcalf, and Messrs. Dale & Burnett, for the appellant.

Messrs. Gillespie & Happy, for the appellees.

Mr. Justice Walker delivered the opinion of the Court:

On the 9th day of January, 1868, appellant purchased of appellee Wilson certain tracts of land, described in the bill. Wilson represented that he owned the title, and appellant relied on the representation, and purchased without any examination of the title. The price which he agreed to pay was $3000, $1000 of which he paid in money, and gave his three promissory notes, due at different dates, and a mortgage on the premises, to secure the balance. Wilson gave to appellant a deed of conveyance for the land, containing full covenants, and appellant went into possession, and has so continued.

Appellant paid the two notes first falling due, but not meeting the other at maturity, Wilson filed a bill to foreclose the mortgage, and, appellant making no defense, a decree was rendered for $617.40, and, in default of payment on a specified day, for a sale of the premises.

It appears that Wilson had title to but four-sevenths of a part of the premises, and three-sevenths to another part, when he sold the land, and it is claimed that, at the rate appellant paid for the land, the interest therein which was not conveyed to him would amount to $1445.85; that he did not discover the fact that he had failed to acquire these interests in the land until after he had paid the two notes first falling due, and when the bill was filed to foreclose for the last, he con-

sulted with an attorney, who advised him that he could not make defense unless he could prove that Wilson was insolvent, which he could not then do.

Appellant, in his bill, charges that Wilson is insolvent. The bill prays that the conveyance be set aside; that Wilson be decreed to refund the money received, and that he be enjoined from selling the land under the decree of foreclosure, or that the contract be specifically performed, or that the decree be enjoined and the balance of the money received on the interest in the land which Wilson did not convey, be decreed to appellant.

On a hearing in the court below, the relief asked was denied and the bill dismissed. From that decree complainant appeals.

The covenants of seizin and good right to convey, if broken at all, are broken at the time the deed is delivered. They are present covenants, and do not run with the land. So that, in this case, when Wilson covenanted that he was well seized in fee, and had good right to convey, and only conveyed four-sevenths of one part and three-sevenths of another portion, there was a breach of the covenants, to the extent of the portion for which he had no title; and appellant had a right of action against him on these covenants to recover the proportion of the purchase money which the interest not conveyed bore to the portion to which the title passed.

Under these covenants, it has never been held that the grantee must wait until he is evicted before bringing suit on the covenants. They are covenants that he then held the title in fee to the lands conveyed, and that he then had good and legal right to convey. The covenants are not that he shall have such a title before the grantee is evicted, but he then has it. Hence, if he does not then have such a title as he covenants he has, there is then a breach on the delivery of the deed; and if he has no title, he can have no lawful right to convey, and there is a breach of that covenant at the same time and in the same manner.

Then, there was a breach of these covenants when the deed

was delivered. What was the measure of damages on these breaches? Manifestly, the loss sustained by the appellant. And what was that loss? Obviously, the value of the interests that Wilson attempted to convey and covenanted he had conveyed, but did not, as he was not the owner of it, and therefore could not convey it. It would be the proportion three-sevenths of the purchase money bore to four-sevenths in one tract, and the proportion four-sevenths bore to three-sevenths in the other tract. These damages were, then, a present subsisting claim in favor of appellant before he made payment of any portion of the purchase money, and, had he been properly advised, he could have avoided the decree of foreclosure by interposing the failure of consideration of the note, or the damages as a recoupment, by answer in the foreclosure suit, and it may be, by cross-bill, he could have recovered a decree over for the balance. This was the attitude of the parties up to that time.

But it is urged that appellant, having failed to interpose this defense in the foreclosure suit, is now estopped to urge it as a ground for restraining the enforcement of the decree; that, inasmuch as he could have enforced his defense in that suit, he should not be heard now to urge it in this proceeding, and should be turned over to a court of law to recover on the covenants in the deed. As a general rule, where a party has a defense, and fails or refuses to make it in a proceeding where it is allowed, equity will not relieve, and allow it against the recovery, when he should have interposed it; but there may be excuses which equity will regard, or circumstances may subsequently arise which will take a case out of the operation of the rule. In this case, appellant did counsel with an attorney, who, not comprehending his rights, advised that the defense could not be made unless appellant could swear appellee was insolvent. From this, it appears that appellant was not willing to waive his right, but was, on the contrary, anxious to interpose the defense, but was prevented by the mistaken advice he received. But is that an excuse? It is a maxim of the law, that ignorance of law excuses no one. And this was a legal ques-

tion, which appellant was, under the maxim, required to know at his peril, and, not knowing it, is bound by his action. He must look to his attorney, who gave the advice, to repair the wrong, if he so acted in giving the advice as to render himself liable.

We have examined the evidence with care as to Wilson's solvency, and find that it shows that he is amply able to respond in damages to the extent of the decree in the foreclosure suit, and perhaps could be made to pay, by process of law, all or the greater portion of the damages arising under the breaches of his covenant. Hence there is nothing shown to have transpired since the rendition of the decree which renders it inequitable to enforce it.

It is urged that it would be a great hardship to compel appellant to pay this money, and leave him to recover it back by an action at law. Whatever hardship he may suffer has been produced by himself. Had he made defense to the foreclosure suit, he would have avoided all the trouble, vexation and expense that has ensued. A party can not lie by and sleep upon his rights, and then ask the courts to relieve him from his negligence or folly. All the hardship is chargeable to himself and his attorney, and he has no legal right to complain of hardship, as it is of his own creation. He could have made his defense, and should have done it when the opportunity was afforded him.

It is urged that Wilson was guilty of fraud in representing that he owned the title, when in fact he was only the owner of the title to an undivided portion of the land. It nowhere appears, nor is there any thing in the evidence from which it can be inferred, that he did not act in the utmost good faith in making the representation he did. Even if such a statement could be regarded as fraudulent, if made when knowing it to be false, there is no evidence that Wilson knew it to be false. The very fact that he conveyed with full covenants, is strong evidence that he believed the truth of the statement.

It has been held in numerous cases, by this court, that there must be knowledge of the falsity of the statement, to render it

fraudulent. See *Miller* v. *Howell*, 1 Scam. 499, *Henshaw* v. *Bryant*, 4 Scam. 97, *Wightman* v. *Hart*, 37 Ill. 123, *Banta* v. *Palmer*, 47 Ill. 99, and *Mitchell* v. *Deeds*, 49 Ill. 416. These cases, and others might be cited to the same effect, announce the rule, that the person making the representations must know them to be false, to constitute fraud. It may be, in some cases there may have been something said which seemingly militates against this rule, but they are not held by the court as entitled to weight.

To hold that every false statement by a vendor, however honestly made, would constitute a fraud authorizing and requiring the canceling of the sale, would be to establish an unreasonably harsh rule. All know that many nice questions arise in regard to titles, about which the ablest attorneys and conveyancers differ, and to hold a person wholly unacquainted with any of the doctrines of tenures, guilty of fraud, because he should be mistaken on such a question, and hold him to all of the consequences of a fraud deliberately perpetrated, would be extremely unreasonable, if not unjust. In such cases, the law has wisely left the grantee to his remedy on the covenants he has taken for the purpose of securing himself against mistakes or imperfections in the title he receives.

A careful consideration of this record, and the questions presented in argument, fails to disclose any error for which the decree of the court below should be reversed, and it must be affirmed.

*Decree affirmed.*