## JOHN W. FRIEND v. CITY OF PITTSBURGH.

APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS NO. 1 OF ALLEGHENY COUNTY.

| 131 | 305 |
| 20 SC ¹ | 6 |
| 131 | 305 |
| d 31 SC | 51 |

Argued November 7, 1889—Decided January 6, 1890.
[To be reported.]

1. A municipal corporation is not bound to seek out its creditor and tender the money due him, if it desires to stop interest. Unless otherwise expressly provided, the municipal treasury is the place where its bonds are to be paid, and, until a bond has been there presented and payment refused, it does not become liable for interest subsequent to maturity, at least if it has provided in the treasury the funds to meet the bond when it matured.

2. In a suit upon a municipal bond, payable in instalments, and never presented until the last one matured, the evidence showing that funds to meet the earlier instalments were not provided as they matured, but were provided before the maturity of the final one, an instruction to allow interest on each instalment until the date when funds were provided for its payment, was as favorable to the plaintiff as he could ask.

Before PAXSON, C. J., STERRETT, CLARK, WILLIAMS, MCCOLLUM and MITCHELL, JJ.

No. 244 October Term 1889, Sup. Ct.; court below, No. 535 March Term 1888, C. P. No. 1.

On February 11, 1888, John W. Friend brought assumpsit against the city of Pittsburgh upon a municipal bond issued by the defendant. The plea was non-assumpsit.

VOL. CXXXI—20

Statement of Facts.

At the trial on May 3, 1889, the plaintiff recovered a verdict for $3,431.34, which the court afterwards set aside, granting a new trial upon motion of the defendant.

At the second trial on September 23, 1889, the following facts were shown:

By the act of April 2, 1869, P. L. 634, the borough of Temperanceville, in Allegheny county, was authorized and required, in certain circumstances, to issue to property owners its bonds, payable in ten equal annual instalments, without interest, for the amount of certain paving and sewer assessments which such owners were required to advance to it. The act of April 2, 1872, P. L. 743, annexed said borough and certain other districts to the city of Pittsburgh and made them part thereof, extending to the districts so annexed the provisions of the act of May 10, 1871, P. L. 718, relative to the payment of the indebtedness of municipalities admitted into said city. In pursuance of this legislation, the city, by ordinance of councils, assumed the municipal debt and liabilities of each of the boroughs embraced in said consolidation act of 1872. By § 13, act of March 20, 1873, P. L. 325, it was provided that any contracts which had been entered into by any of the boroughs mentioned in said act of 1872, should be carried out by the city of Pittsburgh, and the cost of the improvements assessed and collected by and in the name of the city, in the manner prescribed in the laws for street improvements in the said respective boroughs.

On May 12, 1873, an ordinance was enacted by the city councils directing the issue of bonds, in the name of the city of Pittsburgh, for the amount of the grading, paving and curbing of Walnut and Main streets in the late borough of Temperanceville, in accordance with the act of March 20, 1873. Thereupon the city of Pittsburgh issued in pursuance of this ordinance, under its corporate seal, seventy bonds aggregating $58,189.10, all payable in ten annual instalments, without interest, the date of payment in each year being the first day of October. Among these was the bond in suit which was issued to Woods & Brown for $2,137.92, on October 1, 1873. In December, 1887, or January, 1888, Woods & Brown assigned this bond, by writing under seal indorsed thereon, to the plaintiff.

Charge of Court below

Having offered in evidence the bond and assignment thereof, and shown the authority for its issue, the plaintiff rested.

The defendant then adduced evidence tending to show that there had been no presentation of the bond at the city treasury until in 1887 or 1888, shortly before this suit was brought, when there was money in the treasury to meet it; and that the defendant offered to pay to the plaintiff the amount of the principal, which the latter refused to accept, claiming interest on each instalment from the date of its maturity.

In rebuttal, the plaintiff called witnesses whose testimony tended to show that the yearly provision made by the city for the payment of the maturing instalments of the Temperanceville street bonds, was insufficient in amount, and that at different times, in different years, the city officers refused to pay the sums due upon bonds belonging to this series, upon the ground that there was no money in the treasury for that purpose.

Testimony in sur-rebuttal for the defendant tended to show that in 1880, and continuously thereafter, the city had in the treasury ample funds, provided for and appropriated to the payment of these bonds.

At the conclusion of the testimony the court, SLAGLE, J., charged the jury in part as follows:

The plaintiff claims that these obligations bear interest from their maturity, whether they were presented or not, and whether or not the city had money provided for payment; that it was their duty to seek the creditor and pay, and if they did not do so, the obligation bore interest. That was his theory of the case. On the other hand, counsel for defendant claim that they were not liable for interest, in any event, until presentation and refusal. Now these are the two propositions of law. I think they are both wrong, and I will so instruct you when I come to the points. I may say here that the city is not liable for the payment of interest on these obligations before maturity, because the bond itself provides it shall be without interest. After maturity, the liability for interest depends upon two facts; first, a presentation and refusal; or, in the absence of that, it appearing in evidence (the burden being on the plaintiff), that they had not money sufficient to pay these bonds.

In the first place, there is no dispute between the parties as to the validity of this bond. It was issued by the city of Pittsburgh, admittedly under proper authority, and was a valid and binding obligation of the city of Pittsburgh. Under the act of assembly under which it was issued it was to be without interest up until the maturity of each instalment. I further say to you that after maturity these obligations would bear interest as each instalment fell due, if not paid. But it would not bear interest if the city of Pittsburgh had provided the means for payment, unless it was presented and payment refused. It is not alleged that it was presented until 1887 or 1888, and therefore the question, and the only question of fact in the case, is whether or not the city had made provision for the payment of these bonds and had money in the treasury, and would have paid them, was ready to pay them if presented. That is the only question for you to determine.

The evidence is, as I have said, that the two issues of these bonds amounted to $58,000; that the levy of taxes and the appropriation for their payment amounted in no year to $58,000. Therefore, prima facie, the city did not provide for the payment of all these bonds, and they were bound to provide for all of them. You may presume that if they made no provision for the payment of the whole of the bonds, that this one would not have been paid if it was presented; and therefore the city would be liable to pay interest on these bonds, if that is the fact. And there is no evidence of any provision having been made up to a certain period except this appropriation. The city would be liable to pay interest upon those several instalments as they came due, from the time they were due until provision had been made for their payment. If this was a single obligation and payable all at one time, and provision was not made for it at the time it fell due, then in order to relieve themselves of interest they would have to notify the party when they were ready to pay. . . . . . But these bonds were not payable all at one time; they were payable in instalments; and the final payment on the bond became due on October 1, 1883. Now, prior to 1880, as I say, the testimony would indicate that they were not prepared to pay these bonds. . . . . [But if the city, before the final maturity of these bonds, had the money, then it was the duty of the plaintiff to present the

bond for payment. They were presentable every year; an instalment came due every year, and because one instalment was not paid, that would not excuse them for not making a demand for a second instalment. Therefore, up until the maturity of the bond, it was the duty of the holder of it to present it, in order to entitle him to interest. And if, before the final payment became due, the city had provided means for paying it, and had the money in the treasury, and kept it in the treasury all the time, from that time up until the final demand was made, then the interest would stop from the time they were prepared to pay it.] [9]

Now, then, I think (but that is a question of fact for you, of course), that prior to 1880 there is not sufficient evidence to justify you in finding that the city was prepared to pay these bonds as they came due. But Mr. Davis says that in 1880 a loan was made of $30,000, and put to the credit of this fund for the purpose of paying these bonds; and from that time on they had sufficient money at all times to pay all these obligations. . . . . [If that is believed, then the city had provided in 1880 for the payment of these bonds, and a party failing to present them, would not be entitled to receive interest from that time on.] [9] He would be entitled to receive interest prior to that date. . . . .

[Therefore, as I say, the simple question is this: Did the city of Pittsburgh provide the means for the payment of these bonds? If she did, before the maturity of the bond, that is by the maturity of the last payment, then the interest would stop from that date, and you will fix the time when that provision was made. As I have said before, the evidence does not satisfy me that a provision was made before 1880. It is a question of fact, however, for you, and you will fix the time, and allow interest on the instalment from the time it came due, up until the time that you find that the city had provided for the payment of the bonds. That is all the interest the plaintiff is entitled to in this case, in my judgment. If I am wrong, I have put it on record plainly, so that it may be corrected.] [10]

Counsel for plaintiff has asked me to say to you:

1. That the bond in suit being payable to Woods & Brown, or assigns, without specifying any place of payment, it was the duty of the defendant to seek the obligees, or their assigns,

and tender payment to them of the several instalments of the bond as they became due and payable ; and that if the defendant failed or neglected to do this, it became liable to them, or their assigns, for interest on the several instalments from the time each became due.

Answer: This is refused. It would be impracticable for a municipal corporation to seek its creditors to tender payment. It would involve the necessity of the treasurer carrying the funds of the city all over the country, which is certainly not feasible.[1]

2. That the bond sued upon being payable to Woods & Brown, or assigns, without specifying any place of payment, it was the duty of the defendant to seek the obligees, or their assigns, and tender payment to them of the several instalments of the bond as they became due ; and there being no evidence of any such tender, or of any subsequent tender of the amounts due, with interest thereon from the time they became payable, or of any payments thereon, or of any search by the defendant for the said Woods & Brown, or their assigns, the plaintiff is entitled to recover the amount of the bond, with interest on each of the several instalments from the time they were payable to the date of the verdict.

Answer: Refused for the same reason.[2]

3. There being no place of payment specified in the bond sued on, mere ability and readiness to pay on the part of the defendant, without more, will not relieve it from liability for interest on the several instalments of the bond from the time they severally became due.

Answer: Refused for the same reason.[3]

If the court should refuse to charge as above requested, it is requested to charge :

4. That the bond in suit being one of a number of similar bonds issued by the defendant city under the ordinance of May 12, 1873, in evidence, for the amount of the cost of grading, paving and curbing of Walnut and Main streets, in the late borough of Temperanceville, all bearing the same date and payable in annual instalments at the same times, it was the duty of the defendant city to appropriate by ordinance a sufficient sum annually to pay the instalments of all of said bonds as they became due ; and if it failed to make such ap-

propriation the city was in default, and became liable for interest on all such instalments remaining unpaid, from the time they became due.

Answer: Affirmed; but if money for payment was provided in any way, by loan or otherwise, that would be a sufficient appropriation so far as plaintiff was concerned.[6]

5. That in order to relieve the defendant from liability for interest on the several instalments of the bond sued on, from the time they became due, the jury must be satisfied from the evidence that the defendant had, on each of the days the several instalments of this bond became due, money in its treasury applicable to the payment of the bonds of the same issue, sufficient to pay all the instalments of such bonds then due and payable, and at all times afterwards continued to have in its treasury money applicable to that purpose sufficient to pay all of said instalments of said bonds, as well as of the bond in suit.

Answer: Affirmed; but if the defendant had sufficient money to pay the bonds and accrued interest at any time before the maturity of the last instalment and continued to do so, the interest would cease from the time such money was so provided.[7]

6. That only such moneys in the treasury of the city as had been appropriated by ordinance to the payment of said bonds was applicable to that purpose, and only such moneys could be legally drawn from the city treasury to pay them.

Answer: Refused. The mode of providing the money cannot be questioned in this case, the only question being whether or not the money was provided.[8]

Counsel for defendant city respectfully ask the court to charge the jury:

1. That in the absence of any place of payment being specifically fixed in the bonds or obligations of a municipal corporation, the law fixes such place at the treasury thereof.

Answer: Affirmed.[4]

2. That it is the duty of the holder of such municipal warrants, bonds, or other obligations, to present the same for payment at maturity at the place fixed by law for the payment thereof.

Answer: Affirmed.[5]

There was one other matter spoken of by counsel which I

forgot. [It was argued that because the city did not offer to pay the interest that was actually due, they would, therefore, be liable. In order that counsel may have the benefit of an error if I make one, I say to you that that is not correct. The plaintiff demanded interest on the bond from the maturity of each instalment up to date. If his demand was larger than he was entitled to, the city's offer was possibly less than they were bound to pay, but that does not affect the question of the rights of the parties in the matter.] [11]

The jury rendered a verdict in favor of the plaintiff for $2,263.80 and judgment was entered thereon, whereupon the plaintiff took this appeal, assigning for error:

1–3. The answers to plaintiff's points.[1 to 3]

4, 5. The answers to defendant's points.[4 5]

6–8. The answers to plaintiff's points.[6 to 8]

9–11. The parts of the charge embraced in [ ] [9 to 11]

*Mr. W. W. Thompson*, for the appellant:

1. The law is well settled that where there is a contract to pay a certain sum of money, no certain place of payment being appointed in the contract, the debtor, on the maturity of the debt, is bound to find his creditor and tender him the money wherever he may happen to be, provided he is within the state, but is not bound to follow him to a foreign state ; and this rule applies as well in the case of mortgage debt or bond or bill or note, as to an acceptor or maker. It also applies to notes or agreements for payment in specific articles, if they are portable : Allshouse v. Ramsay, 6 Wh. 334; Schaeffer's Est., 9 S. & R. 265–6 ; Wharton on Contracts, §§ 873, 990; Leake on Contracts, 852, 853, 855; Chitty on Contracts, 1057–8, 1069; Chitty on Bills, 359; Roberts v. Beatty, 2 P. & W. 71; Stewart v. Morrow, 1 Gr. 204 ; Howard v. Miner, 20 Me. 330. The rulings of the court below are not sustained by any decision of this court, nor by any authority outside of Illinois : Dillon on Mun. Corp., § 506. The Illinois decisions are all based upon the principle that in that state interest for failure to pay money when due, is a creature of statute; and the statute does not name municipal corporations. Not being liable for interest, they would of course not be bound to seek their credi-

tors to tender payment: Madison Co. v. Bartlett, 2 Ill. 67; People v. Tazewell Co., 22 Ill. 147; City of Pekin v. Reynolds, 31 Ill. 529 (83 Am. Dec. 244); Chicago v. Allcock, 86 Ill. 384; South Park Commissioners v. Dunlevy, 91 Ill. 49.

2. But such is not the law of this state. Interest is recoverable here by the common law when payment of a debt is withheld: Dilworth v. Sinderling, 1 Binn. 494; Obermyer v. Nichols, 6 Binn. 164; Minard v. Beans, 64 Pa. 413; Port Royal v. Graham, 84 Pa. 426; Mining Co. v. Jones, 108 Pa. 69. Municipal corporations are not exempt from this rule: Allegheny v. Campbell, 107 Pa. 535; Kerr v. Corry, 105 Pa. 282; Fidelity etc. Co. v. Scranton, 102 Pa. 387; Beaver Co. v. Armstrong, 44 Pa. 63, as explained in North Penna. R. Co. v. Adams, 54 Pa. 94. The Supreme Court of the United States has also held municipal corporations liable for interest from maturity on interest coupons: Walnut v. Wade, 103 U. S. 695; Koshkonong v. Burton, 104 U. S. 676; Genoa v. Woodruff, 92 U. S. 502; Pana v. Bowler, 107 U. S. 546; Gelpcke v. Dubuque, 1 Wall. 175; Thompson v. Lee Co., 3 Wall. 327; Aurora v. West, 7 Wall. 82; Clark v. Iowa City, 20 Wall. 589. In none of these cases was it suggested that the liability of such corporations differed in this regard from that of individuals or other corporations. That there is no difference, was held in Thorndyke v. United States, 2 Mas. 19; Longdon v. Coastleton, 30 Vt. 286; Hollingsworth v. Detroit, 3 McL. 472; Daniel on Neg. Inst., § 1514. Emlen v. Lehigh etc. Co., 47 Pa. 76, relied on by the defendant, does not decide that municipal corporations are not bound to seek their creditors to tender payment, as is shown by the comments upon it in North Penna. R. Co. v. Adams, 54 Pa. 94; and its syllabus does not correctly state the points decided.

•3. It does not appear to be the law, outside of Illinois, that municipal corporations cannot without express legislative authority contract to pay their debts elsewhere than at their treasuries: Meyer v. Muscatine, 1 Wall. 384; Lynde v. Winnebago Co., 16 Wall. 13; Evansville R. Co. v. Evansville, 15 Ind. 412; Maddox v. Graham, 7 Am. L. Reg. 747. They may do so in Pennsylvania: Commonwealth v. Pittsburgh, 41 Pa. 278; Beaver Co. v. Armstrong, 44 Pa. 64; Kerr v. Corry, 105 Pa. 282; Fidelity etc. Co. v. Scranton, 102 Pa. 387. As they have this power, and, as is well known, frequently exercise it, by making

their obligations payable at distant places, the reason assigned by the court below for exempting them from the operation of the general rule is not a valid one. Having the power to make their obligations payable where they please, it must be presumed, when they have not fixed a place of payment, that the omission is intentional and that they chose to make the debt payable to the creditor wherever he might be when it came due. In issuing bonds a municipal corporation is not exercising governmental powers, but its ordinary corporate powers, common to all corporations: Commonwealth v. Pittsburgh, 41 Pa. 284; Parkinson v. Parker, 85 Pa. 316. Why should it be an exception to a well established general rule? Especially should this not be so, in the present case; this bond not being for a loan made as an investment, and not being intended to be placed in the market, payable to bearer and scattered over the country, but being for a forced loan from property owners, not negotiable, and payable by instalments, so that they could easily be traced and followed. To hold this bond a contract to pay at the city treasury, is to insert in it a provision the insertion of which by the holder would be a material alteration avoiding it: Southwark Bank v. Gross, 35 Pa. 80; Hill v. Cooley, 46 Pa. 259.

4. Even if the bond was payable at the city treasury, the court committed error in charging that interest on the instalments on which the city was in default would stop when it provided funds to meet them, if that was done before the last instalment matured, and that it was the duty of the holder to present it every year to entitle him to interest. Each instalment was a separate debt upon which an action would lie as it came due: Bush v. Stowell, 71 Pa. 208. The holder was not bound to make presentment at maturity: Williamsport Gas Co. v. Pinkerton, 95 Pa. 62. When the debtor has shown no readiness on his part to pay at the time and place specified, presentment is not necessary to entitle the creditor to interest: North Penna. R. Co. v. Adams, 54 Pa. 94; Walnut v. Wade, 103 U. S. 683; Middleton v. Boston L. Works, 26 Pa. 257; Fitler v. Beckley, 2 W. & S. 458; Wallace v. McConnell, 13 Pet. 136; 2 Daniel, Neg. Inst., § 1514; Sedgwick on Damages, 374; 1 Sutherland on Damages, 596. If the debtor withdraws money which was deposited at the time and place of payment, he is liable for interest from the time of withdrawal: Miller v. Bank,

5 Wh. 503. Mere readiness to pay does not relieve from interest: Hummel v. Brown, 24 Pa. 312. But the facts of this case show that the defendant never had the disposition to pay what it owed the plaintiff; on the contrary it refused to pay the interest which the court allowed him, and resisted his claim therefor in this suit. When the plaintiff claims too much and the defendant offers too little, so that there is a necessity for the suit, the defendant must pay interest during its pendency: Delaware Ins. Co. v. Delaunie, 3 Binn. 295; Mining Co. v. Jones, 108 Pa. 69.

*Mr. W. C. Moreland*, for the appellee:

Municipal corporations are not bound to discharge their indebtedness elsewhere than at their treasuries: People v. Tazewell Co., 22 Ill. 147; City of Pekin v. Reynolds, 31 Ill. 529 (83 Am. Dec. 244); South Park Commissioners v. Dunlevy, 91 Ill. 49; Chicago v. People, 56 Ill. 327; Paul v. New York City, 7 Daly 144. It was the duty of the holder of this bond to present it at the city treasury, as the various instalments became due, and demand payment thereof. In the absence of such demand and a refusal thereof, he cannot maintain an action for interest: Beaver Co. v. Armstrong, 44 Pa. 76; Emlen v. Lehigh etc. Co., 47 Pa. 82; Dyer v. Covington Tp., 19 Pa. 200; Luzerne Co. v. Day, 23 Pa. 141; Allison v. Juniata Co., 50 Pa. 351; Weir v. Allegheny Co., 95 Pa. 413; Scranton v. Gas Co., 102 Pa. 382; Commonwealth v. Commissioners, 6 Binn. 5; Commonwealth v. Commissioners, 4 S. & R. 125; Cook v. Commissioners, 61 Ill. 115; Williams v. Smith, 2 Caines 252; People v. Gaine, 1 Johns. 343; People v. Canal Commissioners, 5 Den. 404. Further; the verdict establishes that after March, 1880, the city had in its treasury ample funds expressly provided for these bonds. It is not a case for visiting on the city a penalty for delay in payment subsequent to that date; all such delay is chargeable to the plaintiff.

*Mr. Thompson*, in reply:

The decision in Paul v. New York City, 7 Daly 144, may be correct as to that city on account of the peculiar provisions of its charter, but is not applicable to other cities: Taylor v. New York City, 67 N. Y. 87, 94; Read v. Buffalo, 67 Barb. 526, affirmed by Court of Appeals in 74 N. Y. 463.

OPINION, MR. CHIEF JUSTICE PAXSON:

This suit was brought in the court below against the city of Pittsburgh to recover the amount due on a bond given by said city, and payable by instalments. There was no dispute as to the amount of the bond, nor that the respective instalments were all due; the contention was over the question of interest on the respective instalments after their maturity.

It appeared upon the trial below that no demand had ever been made by the holder of the bond for payment, and that for a portion of the time, at least, the money had been provided for its payment, and was in the city treasury. Under these circumstances the learned judge instructed the jury as follows: "Therefore, as I say, the simple question is this: Did the city of Pittsburgh provide the means for the payment of these bonds? If she did, before the maturity of the bond, that is, by the maturity of the last payment, then the interest would stop from that date, and you will fix the time when that provision was made. As I have said before, the evidence does not satisfy me that a provision was made before 1880. It is a question of fact, however, for you, and you will fix the time, and allow interest on the instalment from the time it came due, up until the time that you find that the city had provided for the payment of the bonds. That is all the interest the plaintiff is entitled to, in my judgment." This and other instructions of like tenor were assigned for error here.

The contention of the plaintiff is that a municipal corporation, like an individual, must seek out its creditor, if it desires to stop interest, and tender him the money due. If this contention is well founded, the effect of it will be to work a revolution in the mode of transacting business with such municipalities. Singularly enough, the precise point does not appear to have been decided in this state; yet there are plenty of dicta scattered through our books, which plainly show the bent of the judicial mind. In the case of Luzerne Co. v. Day, 23 Pa. 141, it was said by this court: "When a legal claim is presented for payment, it is the duty of the commissioners to draw their warrant for its payment. If this is refused, or if the order is not paid when demanded, a suit will lie against the county; but, until demand is made, neither the commissioners nor the county are in default, and without it a suit cannot be main-

tained." And in Allison v. Juniata Co., 50 Pa. 351, it was held that the holder of a county warrant or order cannot recover interest, even after demand and non-payment for want of funds.

It is true these cases were put partly upon the ground that such orders are neither bills, notes, checks, nor contracts, nor even a satisfaction of the original indebtedness. Had the action been upon such original indebtedness, as was said in Dyer v. Covington Tp., 19 Pa. 200, the court could decide whether it was a case for the allowance of interest or not. In Emlen v. Navigation Co., 47 Pa. 76, it was said by Justice READ, in discussing the general rule upon the allowance of interest: " There are, however, exceptions to the general rule, as in the case of banks, who are the debtors of their depositors, and of trustees who have not failed in the discharge of their trusts. And we must undoubtedly add the cases in which the United States and the several states have been prepared to pay their loan-holders when their loans fell due, of which it is their practice to notify their creditors beforehand. . . . . The result is that these debts are payable at a fixed period, . . . . . at which time and place the loanholder is to present his evidence of debt and receive payment. Whether he does or not, interest stops from that moment." The point decided in that case was that the Lehigh Coal & Navigation Co. was not bound to seek its creditor in a foreign country, and make a tender, in order to stop interest.

In the state of Illinois it has been repeatedly decided that municipal corporations are not bound to discharge their indebtedness elsewhere than at their treasuries: City of Pekin v. Reynolds, 31 Ill. 529 ; People v. Tazewell Co., 22 Ill. 147 ; Johnson v. Stark Co., 24 Ill. 75 ; South Park Commissioners v. Dunlevy, 91 Ill. 49. It must be conceded that this is the rule applicable to the United States and to the several states. And the rule does not depend upon the fact alone that in such instances no suit would lie. It rests upon the broader ground of public policy and public convenience, and the further reason that, as to all municipal organizations or governments, the municipal treasury is the recognized place where all claims against it shall be paid. This rule has been recognized by common consent, by every person, and in every place. The reason of it applies with equal force to a city as to a state. The only

difference between them is that one can be sued; the other cannot. It would entail intolerable inconvenience if the rule were otherwise. The bonds of some municipal corporations are largely held in every state in the Union, and in nearly every nation abroad. It is impossible, in many instances, for such corporations to know their creditors, or where they reside. To hold that they must find them and tender the amount of their debt, before interest could be stopped, would entail endless confusion, and do no practical good. Their obligations are as much payable at their treasury as if so " nominated in the bond," and it is so understood by all who deal with them.

We regard the instructions of the court below as favorable to the plaintiff as he was entitled to. There is nothing in the remaining specifications of error which requires discussion.

Judgment affirmed.